**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James H. McGRAW,**
**Defendant-Appellant.**

**No. 74–2388.**

United States Court of Appeals,
Ninth Circuit.

May 1, 1975.

P. Vernon Zeitsoff, Deputy Federal Public Defender (argued), Los Angeles, Cal., for defendant-appellant.

John J. Resich, Jr., Asst. U. S. Atty. (argued), for plaintiff-appellee.

## OPINION

Before ELY and WALLACE, Circuit Judges, and TURRENTINE,* District Judge.

WALLACE, Circuit Judge:

McGraw appeals from his conviction for bank robbery in violation of 18 U.S.C. § 2113(a).[1] His defense at trial was that he was not legally sane at the time of the robbery. On appeal, he argues that the district court erroneously instructed the jury on the issue of insan-

ity and that there was insufficient evidence to support a finding of sanity. We reverse and remand.

On November 28, 1973, McGraw entered the main Los Angeles branch of the First Western Bank and handed a note to a teller which read: "This is a stick-up. Give me all your money. Thank you." She complied and he left. On the afternoon of December 12, he called the F.B.I., admitted the robbery, described himself and advised that he would surrender the next day, which he did.

During trial, the defense called two psychiatrists. Both testified that at the time of the bank robbery, by reason of mental disease or defect, McGraw lacked substantial capacity to appreciate the wrongfulness of his conduct and to conform his conduct to the requirements of law, explaining the reasons for their conclusions.

In rebuttal, the prosecution called one psychiatrist. On direct examination, the psychiatrist testified that McGraw was mentally ill, but that he possessed substantial capacity to appreciate the wrongfulness of his conduct and to conform his conduct to law. On cross-examination, however, the psychiatrist qualified this initial conclusion to mean that McGraw could appreciate the wrongfulness of his conduct in the sense that he could understand that society considered it to be wrong. The psychiatrist testified that if "wrongfulness" meant moral rather than legal wrongfulness, McGraw did *not* possess substantial capacity to appreciate the wrongfulness of his conduct.

In Wade v. United States, 426 F.2d 64 (9th Cir. 1970) (en banc), we held that, for purposes of the insanity defense, "wrongfulness" means moral wrongfulness rather than criminal wrongfulness.

---

* Honorable Howard B. Turrentine, United States District Judge, Southern District of California, sitting by designation.

1. The judgment in this case erroneously refers to section 2111(a) rather than section 2113(a) as stated in the indictment (and in both briefs filed on appeal).

In approving the A.L.I. formulation [of the insanity defense], we note that three Circuits have adopted the word "wrongfulness" (the A.L.I.'s suggested alternative) in place of "criminality" in order to exclude from the criminally responsible category those who, knowing an act to be criminal, committed it because of a delusion that the act was morally justified. We likewise believe that the term "wrongfulness" is preferable.

*Id.* at 71–72 (footnote omitted). A total of five other circuits have now taken this position. United States v. Freeman, 357 F.2d 606, 622 & n.52 (2d Cir. 1966); Blake v. United States, 407 F.2d 908, 915–16 (5th Cir. 1969) (en banc); United States v. Shapiro, 383 F.2d 680, 686 (7th Cir. 1967) (en banc); United States v. Frazier, 458 F.2d 911, 918 & n.7 (8th Cir. 1972) (adopted en banc); *see* United States v. Brawner, 153 U.S.App.D.C. 1, 471 F.2d 969, 991–92 & n. 40 (1972) (en banc). As we interpret the rule, a defendant lacks substantial capacity to appreciate the wrongfulness of his conduct if he knows his act to be criminal but commits it because of a delusion that it is morally justified.

■ Thus, the initial conclusion of the government's psychiatric expert that McGraw could appreciate the wrongfulness of his conduct depends upon an erroneous interpretation of the law of insanity. Counsel for the government also relied upon the same error in arguing the case to the jury. In spite of this conflict and despite McGraw's request, the district court refused to instruct the jury on the correct definition of "wrongfulness." Since there was a diametrically opposed conflict pertaining to the proper definition of "wrongfulness" and it was never clarified to the jury, McGraw's conviction must be reversed.

■ The mistake of the government's psychiatrist has a *further* consequence. Once the defendant has introduced sufficient expert testimony to support a reasonable doubt as to sanity, the government must: (1) introduce its own expert testimony in rebuttal; or (2) discredit the defendant's expert testimony on cross-examination; or (3) rely upon evidence from which the jury may infer that the defendant's expert testimony depends upon an incorrect view of the facts. Otherwise, the evidence of sanity is insufficient to support a conviction. United States v. Shackelford, 494 F.2d 67, 69–70, 75 (9th Cir.), cert. denied, 417 U.S. 934, 94 S.Ct. 2647, 41 L.Ed.2d 237 (1974); United States v. Cooper, 465 F.2d 451, 453–55 (9th Cir. 1973). None of the three alternatives was satisfied in this case.

■ When the government's psychiatric expert testified that, under what we hold to be the proper definition of "wrongfulness," McGraw lacked substantial capacity to appreciate the wrongfulness of his conduct, the government was left with no expert testimony that McGraw possessed such capacity. Thus, all three psychiatric experts in effect agreed that McGraw could not appreciate the wrongfulness of his conduct. One defense psychiatrist was shaken from this opinion on cross-examination but he admitted only that he had no firm opinion on the issue. The testimony on this issue of the remaining defense psychiatrist, and of the government's own psychiatrist, was unchanged. Furthermore, although the lay testimony on the issue of insanity was that McGraw acted normally at the time of the robbery and thereafter, the defense psychiatrist testified that the appearance of normalcy was consistent with the conclusion that McGraw was legally insane at the time of the robbery. The government's psychiatrist did not testify on this issue.

Finally, the government introduced no evidence that McGraw lied to the psychiatrist. At best, the government only raised this possibility in cross-examination of the defense psychiatrists.

We conclude that no evidence rebuts the testimony of at least two expert witnesses that, as properly defined, McGraw lacked substantial capacity to appreciate the wrongfulness of his conduct.

■ When the government presents insufficient evidence of sanity, we sometimes order dismissal or entry of judgment of acquittal. United States v. Cooper, *supra,* 465 F.2d at 455; United States v. White, 447 F.2d 796, 798 (9th Cir. 1971); Hartford v. United States, 362 F.2d 63, 67 (9th Cir.), cert. denied, 385 U.S. 883, 87 S.Ct. 174, 17 L.Ed.2d 110 (1966); Buatte v. United States, 330 F.2d 342, 347 (9th Cir.), rehearing denied, 331 F.2d 848 (9th Cir. 1964). However, since we are not convinced that the government could not introduce expert testimony of McGraw's sanity, United States v. Cooper, *supra,* 465 F.2d at 455; Buatte v. United States, *supra,* 331 F.2d at 848, we leave this issue to be determined initially by the district court.

Reversed and remanded.

ELY, Circuit Judge (concurring):

It seems to me that the record, considered as a whole, establishes, beyond question, that McGraw was legally insane at the time he commited the alleged offense. All of the expert testimony, including that of the physician presented by the prosecution, leads, ineluctably, to that conclusion. In the light of the unrebutted expert testimony, the Government could not establish, and, in my opinion, can never establish, beyond a reasonable doubt, that the appellant was legally sane at the time of the robbery. Thus, I would respectfully suggest to the district judge that, upon remand, the indictment should be dismissed. *See* United States v. Howard, 432 F.2d 1188, 1191 (9th Cir. 1970) (majority concurring opinion). I would not anticipate that the Government, acting responsibly, would undertake, at this late time, to seek out another medical witness who might contradict the testimony of the three apparently reputable physicians who have already expressed the opinion that, under the test of Wade v. United States, cited in the majority opinion, McGraw was not sane when he committed the robbery.

With the addition of these comments, I concur in the careful analysis set forth by my Brother Wallace in the majority opinion.